IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JEFFREY RAY GROOMS, Independent Administrator of the Estate of Christine Grooms, Deceased, | § § § § § | Civil Action No. _____ |
| Plaintiff, | § § | |
| vs. | § § | **COMPLAINT**<br>**and** |
| MACKIE WOLF ZIENTZ & MANN, P.C., And MARK D. CRONENWETT, | § § § § | **DEMAND FOR JURY TRIAL** |
| Defendants. | § § § | (Unlawful Debt Collection Practices) |

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Jeffrey Ray Grooms, Independent Administrator of the Estate of Christine Grooms, Deceased, Plaintiff in the above-styled action, and files this Complaint under the Fair Debt Collection Practices Act and would respectfully show this Honorable Court as follows:

**Preliminary Statement**

1.  Plaintiff Jeffrey Ray Grooms, Independent Administrator of the Estate of Christine Grooms, Deceased, brings this action to secure redress from unlawful collection practices engaged in by defendants Mackie Wolf Zientz & Mann, P.C. ("Mackie") and Mark D. Cronenwett ("Cronenwett"). Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA") and the Texas Finance Code ("TDCA").

2.  The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection

with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

3. In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C.A. § 1692(a).

4. Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

5. The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

6. The FDCPA applies to the litigating activities of lawyers. The FDCPA defines the "debt collector[s]" to whom it applies as including those who "regularly collec[t] or attemp[t] to collect, directly or indirectly, [consumer] debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly "attempts" to "collect" those consumer debts. *See, e.g.,* BLACK'S LAW DICTIONARY 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings"). *Heintz v. Jenkins,* 514 U.S. 291, 294 (1995). "The Act [FDCPA] applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Id.* at 299.

7. Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq*.

## Jurisdiction and Venue

8. Jurisdiction of this Court attains pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331 and 1337(a), and the doctrine of supplemental jurisdiction for the TDCA claims.

9. Venue and personal jurisdiction are proper in this District under 28 U.S.C. § 1391(b)-(d) and because the acts and transactions occurred here, and Defendants' office is in this District.

## Parties

10. Plaintiff Jeffrey Ray Grooms is an individual who resides in Fort Worth, Tarrant County, Texas.

11. Defendant Mackie is a professional corporation chartered under the laws of the State of Texas with its principal office located at 14160 Dallas Parkway, Suite 900, Dallas, Texas 75254.

12. Defendant Cronenwett is an individual residing in Texas with his usual place of business at 14160 Dallas Parkway, Suite 900, Dallas, Texas 75254.

## Facts Relating to the Defendants

13. Defendants' business activities consist of acting as a collection agency, using the mails and telephone system to collect delinquent debts for others, primarily mortgage lenders.

14. On their website, Mackie says: "Mackie Wolf Zientz & Mann, P.C. provides comprehensive legal services to the mortgage banking and financial services industries." Mackie lists the legal services it provides as being in the following areas: "foreclosure, bankruptcy, eviction, litigation, REO closings, title examination & title curative."

15. On their website, Mackie says: "Mark D. Cronenwett joined the firm in October 2012 and serves as the Managing Attorney of the firm's Litigation Section. Mark has 15 years of

experience in mortgage-lending litigation; general commercial litigation; general insurance defense and appellate law." Mackie provides Cronenwett with the title of "Director of Litigation."

16. Mackie is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and TEX. FIN. CODE § 392.001(6). Mackie is also a "third-party debt collector" as defined by TEX. FIN. CODE § 392.001(7).

17. Cronenwett is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and TEX. FIN. CODE § 392.001(6). Cronenwett is also a "third-party debt collector" as defined by TEX. FIN. CODE § 392.001(7).

### Facts Relating to the Plaintiff

18. Defendants have been attempting to collect an alleged debt from Plaintiff claimed to be owed to The Bank of New York Mellon Trust Company, N.A. as Trustee for Mortgage Assets Management Series I Trust. Such debt was incurred, if at all, for personal, family or household purposes and not for business purposes. Specifically, the transaction was for a reverse mortgage with Evelyn Christine Grooms as the mortgagor. The death of Christine Grooms on May 2, 2018, was an event of default on the mortgage.

19. Plaintiff was appointed the Independent Administrator of the Estate of Evelyn Christine Grooms aka Christine Grooms, Deceased, on December 3, 2018 by the Probate Court Number One of Tarrant County, Texas, and Letters of Administration were issued on December 5, 2018. His appointment continues in effect.

20. Plaintiff was determined to be the sole heir of the intestate Estate of Evelyn Christine Grooms aka Christine Grooms, Deceased, on December 3, 2018, by the Probate Court Number One of Tarrant County, Texas.

21. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and Texas Finance Code § 392.001(1). As the Sixth Circuit held in *Wright v. Finance Service of Norwalk, Inc.,* the phrase "with respect to any person" includes more than just the addressee of the offending letters and includes, at a minimum, those who "stand in the shoes" of the debtor or have the same authority as the debtor to open and read his letters. *Wright,* 22 F.3d 647, 650 (6th Cir. 1994) (en banc). Thus, Plaintiff and counsel for the estate "stand in the shoes" of Christine Grooms and have the authority to open and read Mackie's letters and have standing to sue Defendants under the FDCPA. *See also Anderson v. Good Shepherd Hospital. Inc.,* No. 2:09-CV-112 (TJW) at *8-9, (E.D. Tex. 2011). Otherwise, a debt collector's liability would depend upon fortuities such as an alleged debtor's death. Such a result is inconsistent with the broad scope of the FDCPA.

**Facts Constituting Debt Collection Violations**

22. On January 18, 2019, Defendants sent the attorney for Jeffrey Ray Grooms a Notice of Default and Intent to Accelerate. Such Notice incorrectly identifies Jeffrey Ray Grooms as "Applicant," and appears to make a demand on his attorney. *See* Exhibit 1.

23. An identical notice was also sent to the residence address of Jeffrey Ray Grooms, Independent Administrator of the Estate of Christine Grooms, and to Christine Grooms herself at 801 Ala Drive, the residence of the Decedent. *See* Exhibit 2. This Notice was sent at a time when Jeffrey Ray Grooms was represented by JoAnn Means, his counsel in the probate administration.

24. The Notice made demand on Jeffrey Ray Grooms, his attorney, or Christine Grooms, to make "payment in full of the balance owed" which was quoted as $83,759.93 as of the date of the Notice. Payment was demanded within thirty days of the Notice, despite allowing thirty days from the receipt of the Notice to dispute the debt. The Notice further stated that if payment was not made

within thirty days of date of the Notice, Celink would accelerate the maturity of the note and schedule a foreclosure sale.

25. On March 14, 2019, counsel for Grooms sent Mackie correspondence advising that the claimed lien on the property was void. *See* Exhibit 3.

26. On or about March 25, 2019, Mackie filed a claim on the title policy, based on the March 14, 2019 letter from counsel for Grooms. Mackie did not disclose the filing of this claim against the title insurer until almost three years later, in March of 2022. *See* Exhibit 4, a March 8, 2022 email from Cronenwett.

27. On information and belief, the title insurer was not obligated to pay the lender under the title policy, *unless and until* a title defect exists as to the property.

28. Another Notice of Acceleration was mailed by Defendant directly to Jeffrey Ray Grooms as "Independent Executor" on April 10, 2019, despite knowledge of his representation by JoAnn Means in the probate court. *See* Exhibit 5. This date is also after the claim was made by Mackie and/or Cronenwett against the title insurer on behalf of The New York Bank of Mellon Trust Company, N.A., under the policy issued in 2006.

29. Defendants improvidently removed the probate case to federal court on May 1, 2019, as Case No. 4:19-CV-364-A.

30. The probate case was remanded from federal court to Probate Court No. One by order dated June 23, 2020, because the federal court lacked subject matter jurisdiction and the state probate court is the only court of original jurisdiction for all matters concerning decedent's estates. *See* Exhibit 6, the order of remand and corresponding judgment.

31. Mackie and Cronenwett falsely asserted that the orders and events in the remanded Case No. 4:19-CV-364-A were transferred as live pleadings back to the probate court. Moreover,

Mackie and Cronenwett attempted to modify pleadings that originated in the remanded federal case by filing "amendments" into the probate court records as new pleadings. *See* Exhibit 7, Second Supplement to Defendant's Second Amended Answer, First Amended Counterclaim, and Original Third-Party Complaint filed on January 21, 2021. Exhibit 7 was filed 10 days <u>after</u> discovery was served on Plaintiff, asserting for the first time in the probate court, the existence of a counterclaim and the addition of third-party defendants to the probate case, all of whom had been added while the case had been pending in federal court prior to remand. Further, Exhibit 7 seeks recovery of attorney fees.

32. On February 24, 2021, Plaintiff filed an objection and motion for protective order to seek relief from the court, so that counsel for Jeffrey Ray Grooms, Independent Administrator of the Estate of Christine Grooms, Deceased, would not have to respond to discovery directed to non-parties. *See* Exhibit 8, the Objection and Motion for Protective Order.

33. From that date until the present, Jeffrey Ray Grooms (individually), Paula Grooms Davis and Michael Grooms have never been added to the "Party Information" to the probate case in the records of e-file Texas for that litigation and are still not associated with any attorney in the probate case. *See* Exhibit 9, the Party Information from the electronic service provider as of August 8, 2022.

34. Neither Mackie nor Cronenwett complied with the Texas Rules of Civil Procedure for proper addition of Third-Party Defendants to the probate court case after remand. Yet they continue to seek remedies against these individuals, knowing full well that such individuals are not parties in the probate case.

35. On or about April 13, 2021, the title insurer, Commonwealth Land Title, delivered a check in the sum of $89,000.00 to Cronenwett on behalf of the loan servicer, Celink, which appears

to have been delivered under the policy of title insurance as compensation to The Bank of New York Mellon Trust Company, N.A. for the invalid lien.  The existence of the claim (and certainly not the payment) was not disclosed to Plaintiff until March 8, 2022. *See* Exhibit 4, the email from Cronenwett to Jarzombek.

36. On August 6, 2021, Reverse Mortgage Servicing, Inc. ("RMS") sent a letter to Christine Grooms which was received and read by Jeffrey Grooms, Independent Administrator. The letter claimed an indebtedness of $136,473.75 and identified the creditor as Cascade Funding Mortgage Trust – HB3. No credit was allowed against the debt for the $89,000.00 paid to Cronenwett by the title insurer. The August 6, 2021 correspondence is attached as Exhibit 10.

37. The August 6, 2021 correspondence from RMS was directed to a deceased property owner, rather than to counsel for the Independent Administrator of the Estate of Christine Grooms, Deceased.

38. On August 30, 2021, Mackie sent a letter to Christine Grooms, deceased, at her former home address, which falsely asserted that Christine Grooms had requested payoff amounts for "the above-referenced loan" and made a demand for payment of $50,758.66 "subject to final verification upon receipt of funds by Reverse Mortgage Solutions, Inc."  The letter failed to identify the loan or lender. The payment received from the title insurer that should have paid off the mortgage in question due to a defect in title is falsely listed as a "corporate advance." *See* Exhibit 11, the August 30, 2021 letter.

39. The August 30, 2021 correspondence was directed to a deceased obligor at the property address, rather than to counsel for the Independent Administrator for the deceased obligor, who was known to Mackie and at such time appearing in Court opposite Mackie and Cronenwett.

40. The payment of the face amount of the title policy of $89,000.00 to Cronenwett on behalf of The Bank of New York Mellon Trust Company, N.A. on April 13, 2021, should have satisfied the debt claimed by the lender. Mackie represented that its client was owed money for attorney fees, and that money should come from foreclosure of the invalid lien, despite the fact that money had been received from the title insurer sufficient to pay the debt owed to The Bank of New York Mellon Trust Company, N.A. as a result of the defect in the lien.

41. Mackie and Cronenwett have wrongfully persisted with attempting to foreclose a lien on the property despite receiving more than the full amount of the outstanding debt, based on a defect in title, from the title insurance carrier in April 2021. All in what appears to be a quest for recovery of interest and attorneys' fees, they have continued to falsely represent to the probate court that consent to the reverse mortgage can be imputed to the heirs of Ray Grooms, deceased.

42. The foregoing acts and omissions as described in paragraphs 22 through 41 were undertaken by Mackie and Cronenwett (as an employee and representative of Mackie) acting within the course and scope of his employment at all times relevant to this matter.

43. The foregoing acts and omissions of the Defendants were undertaken by them willfully, intentionally, knowingly, and/or in gross disregard for the rights of the Plaintiff.

44. The foregoing acts and omissions of the Defendants were undertaken indiscriminately and persistently, as part of their regular and routine collection efforts, and without regard to or consideration of the rights of the Plaintiff.

## First Claim for Relief

45. The Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs. Defendants' violations of the FDCPA include, but are not limited to:

   a. In violation of 15 U.S.C. § 1692c(a)(2), Mackie sent a communication directly to Christine Grooms, deceased, falsely representing that she had

    requested payoff information, when it knew that Jeffrey Ray Grooms was serving as the Independent Administrator of the Estate of Christine Grooms, Deceased, and that Mr. Grooms was represented by counsel. Mackie intended that Mr. Grooms read the communication – and Mr. Grooms did read the communication. Mackie knew that Jeffrey Ray Grooms was represented by counsel and knew the identity of that counsel.

 b. In violation of 15 U.S.C. § 1692d(1), Defendants used criminal means to harm the property of any person, specifically, Defendants proffered the affidavit of Kortney Gurnell which swore falsely that Christine Grooms had claimed to be the "sole owner" of the property, when the words "sole owner" did not appear in the document.

 c. In violation of 15 U.S.C. § 1692d(2), Mackie used language the natural consequence of which is to abuse the hearer thereof by sending the letter addressed to Christine Grooms, knowing that she was deceased and knowing that Jeffrey Grooms would receive and read the letter.

 d. In violation of 15 U.S.C. § 1692e(2)(a) and 15 U.S.C. § 1692e(10), Defendants used objectively false representations and/or false, deceptive or misleading representations or means in connection with the collection of a consumer debt. Specifically, Defendants have represented that pleadings and parties in a case subsequently remanded from the United State District Court for the Northern District of Texas are now live pleadings and parties in a matter pending in the Probate Court No. One in Tarrant County, Texas, from which the case was removed, despite the fact that the federal case was dismissed for lack of jurisdiction based on the probate exception to federal jurisdiction. Additionally, Defendants have represented that the lien on the property is valid, and that a debt is due, when the debt has been satisfied by payment from the title insurer.

 e. In violation of 15 U.S.C. § 1692(e)(5) and the "least sophisticated consumer" standard, the Defendants threatened to take an action (and actually took such an action) which cannot legally be taken or that is not intended to be taken. Such actions include filing pleadings alleging the existence of third-party defendants which have never been added in the Probate Court, for the purpose of foreclosing on a property with a title defect, for which payment has been made by the title insurer to the client of Defendants.

 f. In violation of 15 U.S.C. § 1692f, the Defendants used unfair or unconscionable means to collect or attempt to collect a consumer debt by their making a claim on the title insurer for a defect in title, and thereafter continuing litigation against the Plaintiff in Probate Court No. One for in excess of two years without disclosing their having made the claim; recovering $89,000.00 for their lender-client; and continuing to seek foreclosure despite a defective title – *for which payment has been received* – for the purpose of collecting

      attorney fees and costs which were increased by the improper removal to federal Court and which continue to increase. Any non-recourse debt was satisfied by the payment of the title insurer.

    g.    In violation of 15 U.S.C. § 1692f, the Defendants used unfair or unconscionable means to collect or attempt to collect a consumer debt that has been satisfied by the title insurer, and which the Defendants are either collaterally estopped from collecting, or otherwise barred as they have elected a remedy.

46.    Under 15 USC § 1692k, Defendants' violations of the FDCPA render them jointly and severally liable to Plaintiff for statutory damages, actual damages, costs, and reasonable attorney's fees.

## Second Claim for Relief

47.    The Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs. The Defendants' violations of the TDCA include, but are not limited to:

    a.    In violation of TEX. FIN. CODE § 392.301(a)(1), Defendants used criminal means, specifically perjury, by offering a false affidavit to attempt to collect a consumer debt.

    b.    In violation of TEX. FIN. CODE § 392.301(a)(8), Defendants threatened to take (and/or did take) an action prohibited by law. Such actions include misrepresenting the entitlement to collect attorney fees on an extinguished debt; filing pleadings that are false, asserting that the lien they seek to foreclose is valid; claiming that federal pleadings from a case dismissed for want of jurisdiction are active pleadings in the case pending in Probate Court No. One in Tarrant County, Texas.

    c.    In violation of TEX. FIN. CODE § 392.304(a)(8), Defendants misrepresented the status and character of the debt by claiming entitlement to collect attorney fees on an extinguished debt; filing pleadings that are false, asserting that the lien they seek to foreclose is valid; claiming that federal pleadings from a case dismissed for want of jurisdiction are active pleadings in the Probate Court.

    d.    In violation of TEX. FIN. CODE § 392.304(a)(8), Defendants misrepresented that the debt could be increased by the addition of costs and attorney's fees, when the debt was non-existent. Defendants have falsely represented the owner of the note.

  e. In violation of TEX. FIN. CODE § 392.304(a)(19), Defendants used false representations and deceptive means to collect a consumer debt.

48. Under TEX. FIN. CODE ANN. § 392.403, the Defendants' violations of the TDCA render them jointly and severally liable to Plaintiffs for actual damages, statutory damages, injunctive relief, declaratory relief, costs, and reasonable attorney's fees.

## Prayer for Relief

WHEREFORE, the Plaintiff prays that this Court:

1. Declare that Defendants' actions violate the FDCPA and TDCA.

2. Enjoin the Defendants' actions which violate the TDCA.

3. Enter judgment for Plaintiff and against Defendants for actual damages, statutory damages, costs, and reasonable attorney's fees as provided by 15 U.S.C. § 1692k(a) and/or TEX. FIN. CODE ANN. § 392.403.

4. Grant such further relief as deemed just.

Respectfully submitted,

*/s/Jerry J. Jarzombek*
Jerry J. Jarzombek
Texas Bar No. 10589050
THE LAW OFFICE OF JERRY JARZOMBEK, PLLC
6300 Ridglea Place, Suite 610
Fort Worth, Texas 76116
817-348-8325
817-348-8328 Facsimile
*jerryjj@airmail.net*

Christopher G. Lyster
State Bar No. 12746250
chris@lysterlaw.com
**COOPER & LYSTER, PLLC**
6300 Ridglea Place, Suite 610
Fort Worth, Texas 76116
Telephone: (817) 738-7000
Facsimile: (817) 900-3331

ATTORNEYS FOR PLAINTIFF,
**JEFFREY RAY GROOMS, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF CHRISTINE GROOMS, DECEASED**

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury in this action.

Respectfully submitted,

*/s/Jerry J. Jarzombek*
Jerry J. Jarzombek
Texas Bar No. 10589050
THE LAW OFFICE OF JERRY JARZOMBEK, PLLC
6300 Ridglea Place, Suite 610
Fort Worth, Texas 76116
817-348-8325
817-348-8328 Facsimile
*jerryjj@airmail.net*

*/s/ Christopher G. Lyster*
Christopher G. Lyster
State Bar No. 12746250
chris@lysterlaw.com
**COOPER & LYSTER, PLLC**
6300 Ridglea Place, Suite 610
Fort Worth, Texas 76116
Telephone:  (817) 738-7000
Facsimile:   (817) 900-3331

**ATTORNEYS FOR PLAINTIFF,
JEFFREY RAY GROOMS, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF CHRISTINE GROOMS, DECEASED**