IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JEFFREY RAY GROOMS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:22-cv-00772-O |
| § | |
| MACKIE WOLF ZIENTZ & MANN, § | |
| P.C., *et al.*, § | |
| § | |
| Defendants. § | |

## ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Before the Court are Defendants' Motion for Judgment on the Pleadings and Brief in Support (ECF Nos. 16 & 17), filed October 24, 2022; Plaintiff's Response and Brief in Support (ECF Nos. 22 & 23), filed November 14, 2022; and Defendants' Reply (ECF No. 26), filed November 28, 2022.[1] Defendants contend that (1) Plaintiff's Fair Debt Collection Practices Act ("FDCPA")[2] claims are barred because they are enforcing a security interest, (2) Plaintiff's remaining FDCPA claim lacks sufficient allegations to sustain his cause of action, and (3) Plaintiff fails to allege that Defendants are debt collectors or third-party debt collectors for purposes of the Texas Debt Collection Act ("TDCA").[3] After reviewing the complaint, the briefing, and relevant authorities, the Court **GRANTS** Defendants' motion for judgment on the pleadings in its entirety. Additionally, the Court **DENIES** Plaintiff's request for leave to amend.

---

[1] Defendants' motion for judgment on the pleadings is based on Plaintiff's purported failure to articulate a cognizable claim in his complaint. Defs.' Mot., ECF No. 17. Conversely, Plaintiff's motion to strike relates to Defendants' assertion of various affirmative defenses in their answer that are not at issue here. Pl.'s Mot. to Strike, ECF No. 18. Further, Defendants' motion to quash also deals with issues outside the scope of the motion for judgment on the pleadings. Defs.' Mot. to Quash, ECF No. 31. Accordingly, the Court only addresses Defendants' motion for judgment on the pleadings.

[2] 15 U.S.C. § 1692 *et seq.*

[3] Tex. Fin. Code § 392.001 *et seq.*

1

## I. BACKGROUND[4]

On May 2, 2018, Christine Grooms ("Decedent") passed away, with her estate going to her sole heir, Jeffrey Grooms ("Plaintiff"). Plaintiff is also the Independent Administrator of the Estate of Christine Grooms. Part of the estate was a property that Decedent had taken a reverse mortgage on that still had an outstanding balance on the debt. Upon the death of Decedent, an event of default occurred on the mortgage.[5] On January 18, 2019, Mackie Wolf Zientz & Mann, P.C. ("Mackie") and Mark D. Cronenwett ("Cronenwett" and, together with "Mackie," "Defendants") issued a Notice of Default and Intent to Accelerate (the "Notice") to Plaintiff, his attorney, and Decedent on behalf of The Bank of New York Mellon Trust Company, N.A.[6] The Notice demanded payment of the remaining balance of the mortgage debt within thirty days, or the Mortgage Servicer, Celink, would accelerate the maturity date and commence foreclosure of the property securing the debt. On March 14, 2019, Plaintiff's counsel sent correspondence to Defendants advising that the claimed lien on the property was void.[7]

Subsequently, on March 25, 2019, Mackie filed a claim on the title insurance policy based on the March 14 letter from Plaintiff's counsel.[8] Within the next couple of months, Defendants mailed another Notice of Acceleration to Plaintiff and removed the probate case to federal court. The case was later remanded back to state court, where Defendants engaged in a series of improper conduct during the litigation.[9] Then, on April 13, 2021, the title insurer—with whom Defendants

---

[4] Unless otherwise specified, all facts pertaining to the Court's resolution of Defendant's motion are drawn from Plaintiff's Complaint. *See* Pl.'s Compl., ECF No. 1. These facts are taken as true and viewed in the light most favorable to the Plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).
[5] *Id.* at 4.
[6] *Id.* at ¶ 5. At this point, the parties have engaged in various disputes arising out of the debt for a span of years, and there appears to be a high degree of animosity between them.
[7] *Id.* at 5–6.
[8] *Id.* at 6.
[9] *Id.*

filed their title claim—delivered a check in the sum of $89,000.00 to Defendants on behalf of the loan servicer, Celink. The check was delivered under the policy as compensation to The Bank of New York Mellon Trust Company, N.A.[10] Later that year, Defendants sent another letter addressed to Decedent, which claimed that she (who had been deceased for two years by that point) had requested payoff amounts for the mortgage.[11]

Plaintiff filed a complaint in this Court on August 29, 2022, alleging that Defendants' actions during the foregoing events violated the FDCPA and the TDCA. Defendants filed a motion for judgment on the pleadings[12] on October 24, 2022, Plaintiff filed a response[13] on November 14, 2022, and Defendants filed a reply[14] on November 28, 2022. Defendants' motion for judgment on the pleadings is now ripe for the Court's review.

## II. LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). For purposes of Rule 12(c), pleadings are closed once a complaint and answer are filed, provided that no counterclaim or crossclaim is made. *MKD Mgmt., LLC v. Frigon*, No. 2:20-cv-14-Z-BR, 2020 WL 5745913, at *2 (N.D. Tex. Aug. 5, 2020) (citing *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005)). Rule 12(c) motions are "designed to dispose of cases where the material facts are not in dispute and the judgment on the merits can be rendered by looking to the substance of the pleadings." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citation omitted). "The

---

[10] Pl.'s Compl. 7, ECF No. 1
[11] *Id.* at 8.
[12] Defs.' Mot. for J. on Pleadings, ECF No. 16.
[13] Pl. Resp., ECF No. 24.
[14] Defs.' Reply, ECF No. 26.

3

standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss." *Guidry v. Am. Pub. Life Ins.*, 512 F.3d 177, 180 (5th Cir. 2007) (citation omitted).

Under the 12(b)(6) standard, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). In other words, to defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausibile when the plaintiff pleads factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. When "a complaint contains facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

### B. Federal Debt Collection Practices Act ("FDCPA")

The FDCPA prohibits "debt collector[s]" from making "false or misleading representations" and from engaging in "abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). To state a claim under the FDCPA, a plaintiff must show that "(1) he has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the

FDCPA." *Hunsinger v. Sko Brenner Am., Inc.*, No. 3:13-cv-0988-D, 2014 WL 1462443, at *3 (N.D. Tex. Apr. 15, 2014) (Fitzwater, C.J.) (citations omitted).

In defining what a "debt collector" is for purposes of the FDCPA, the United States Supreme Court interpreted the statute as providing two definitions: a "primary definition" and a "limited-purpose" definition. *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1035–36 (2019). The primary definition states that the term "debt collector" means

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due another.

15 U.S.C. § 1692a(6)). Parties who fall under the primary definition are prohibited from engaging in the broader category of unlawful debt collection practices mentioned in the FDCPA. *Obduskey*, 139 S. Ct. at 1036. Conversely, the limited-purpose definition states that

> [f]or the purpose of section 1692f(6) [the] term [debt collector] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692f(6)). Parties who fall under the limited-purpose definition are only prohibited from engaging in the narrow category of unlawful acts outlined in § 1692f(6). *Id.* at 1037.

The existence of two statutory definitions is instructive. As *Obduskey* explained, the drafting of the statute reveals that the "prohibitions contained in § 1692f(6) will cover security-interest enforcers, while the other 'debt collector' provisions of the [FDCPA] will not." *Id.* at 1038. As such, security-interest enforcers are only subject to § 1692f(6), which prohibits them from utilizing nonjudicial action to dispossess a party of property in a certain manner.[15] *Id.* at 1036

---

[15] The full list of prohibited debt collection practices outlined in 15 U.S.C. § 1692f(6) is as follows: "(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

5

(quoting § 1692f(6)). The prohibited collection methods relevant to this case is when "there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A).

### C. Texas Debt Collection Act ("TDCA")

The TDCA prohibits debt collectors from employing wrongful practices in order to collect consumer debts. *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). To maintain a cause of action under the TDCA, a plaintiff must establish that "(1) the debt is a consumer debt; (2) the defendant is a debt collector as defined by the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful act." *Birchler v. JPMorgan Chase Bank*, No. 4:14-cv-81, 2015 WL 1939438, at *5 (N.D.Tex. Apr. 19, 2015) (applying Texas law) (citation omitted). A "debt collector" under the TDCA "means a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." Tex. Fin. Code § 392.001(6). The TDCA also defines "third-party debt collector" by incorporating the definition used in § 1692a(6) of the FDCPA. *Id.* § 392.001(7). However, the TDCA excludes from this definition "an attorney collecting debt as an attorney on behalf of, and in the name of, a client unless the attorney has non-attorney employees who: (A) are regularly engaged to solicit debts for

collection; or (B) regularly make contact with debtors for the purpose of collection or adjustment of debts." *Id.*

### III. DISCUSSION

#### A. Timing of Defendants' Rule 12(c) Motion

Citing no case law or authority, Plaintiff argues that Defendants' Rule 12(c) motion is premature because it was filed "long before the deadline to amend pleadings."[16] The Court disagrees. Rule 12(c) states that a plaintiff may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). For purposes of Rule 12(c), pleadings are closed once a complaint and answer are filed, provided that no counterclaim or crossclaim is made. *Frigon*, 2020 WL 5745913, at *2. Here, both the complaint and the answer have been filed.[17] Further, no counterclaims or crossclaims have been asserted. Accordingly, the Court holds that Defendants filed their motion for judgment on the pleadings at the proper time.

#### B. Plaintiff's FDCPA Claim

##### i. Plaintiff's claims under Sections 1692c-e are barred by *Obduskey*.

Plaintiff's first claim for relief stems from §§ 1692c–f of the FDCPA.[18] Defendants contend that Plaintiff's claims are barred under *Obduskey* because Defendants are only seeking to enforce a security interest, which bars any claim under the FDCPA that falls outside of § 1692f(6).[19] Plaintiff offers three arguments in response. Based on the plain text of the statute, the Court finds

---

[16] Pl.'s Br. in Supp. of Resp. (hereinafter, "Pl.'s Resp.") 2, ECF No. 23.
[17] Pl.'s Compl., ECF No. 1; Defs.' Answer, ECF No. 14.
[18] Pl.'s Compl. 9–11, ECF No. 1.
[19] Defs.' Br. in Supp. of Mot. (hereinafter, "Def.'s Mot.") 4–5, ECF No. 17.

that Plaintiff's §§ 1692c–e claims, as alleged in his complaint, are barred. The Court addresses each of Plaintiff's responsive arguments in turn.

First, Plaintiff argues that *Obduskey* does not apply because Defendants have supposedly engaged in "debt collection" under the FDCPA, rendering the entirety of the FDCPA applicable.[20] In making this argument, Plaintiff cites a Sixth Circuit case—*Glazer v. Chase Home Fin. LLC*—that lays out "guideposts" to determine whether an actor is a debt collector.[21] Plaintiff then points to his complaint, arguing that the alleged conduct falls within *Glazer*'s guideposts.[22] This alleged conduct includes sending multiple Notices of Default and Intent to Accelerate to Plaintiff, as well as sending the payoff quote that Decedent never requested.[23]

The Court finds this argument unavailing. Plaintiff's complaint makes clear that Defendants' actions are tied to the enforcement of a security interest, classifying Defendants only, at best, as debt collectors under the limited-purpose definition. *Obduskey* explained that where a defendant is engaged in no more than security-interest enforcement, it falls "outside the scope of the primary 'debt collector' definition." 139 S. Ct. at 1033. The scope of such enforcement includes the "antecedent steps required under state law to enforce a security interest," such as "notices to the [property owner] . . . [to] pay[] h[is] outstanding debts." *Id.* at 1039. Similar to the defendants in *Obduskey*, Defendants here are a law firm merely enforcing a reverse mortgage taken out by Decedent. Even Plaintiff acknowledges this in his response to Defendants' motion, pointing out that a "a reverse mortgage is a non-recourse debt, meaning the lender may look only to the proceeds of the sale of the home for repayment when the debt becomes due."[24] Because the pleadings show

---

[20] Pl.'s Resp. 3–5, 8-9, ECF No. 23.
[21] *Id.* at 3–4 (citing *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013)).
[22] *Id.* at 4–5.
[23] *Id.* at 4–5, 8–9.
[24] Pl.'s Resp. 7, ECF No. 23.

that Defendants are security-interest enforcers under the limited-purpose definition, Plaintiff cannot state a FDCPA claim under §§ 1692c–e since only debt collectors under the primary definition are subject to those prohibitions.

Second, Plaintiff argues that Defendants qualify as "debt collectors" under the entire FDCPA because they "regularly" collect debts.[25] Plaintiff cites two cases in support of his position: *Heintz v. Jenkins* and *Hester v. Graham, Bright, & Smith, P.C.*[26] In *Heintz*, the U.S. Supreme Court held that "a lawyer who 'regularly,' *through litigation*, tries to collect consumer debts" is bound by the provisions of the FDCPA. 514 U.S. 291, 292 (1995) (citation omitted). And in *Hester*, the Fifth Circuit explained that a law firm collected debts regularly when it "attempted to collect debts on 450 occasions" in the preceding years. 289 F. App'x 35, 41 (5th Cir. 2008). Relying on these cases, Plaintiff asserts that Defendants are debt collectors due to their regular "business activities consist[ing] of acting as a collection agency" and their regular attempts "to collect an alleged debt from Plaintiff."[27]

Once again, the Court is not persuaded by this argument. Not only do these cases involve defendants who collected debts instead of enforcing security interests, they also precede *Obduskey*. *See Heintz*, 514 U.S. at 293 (deciding, in 1995, issues related to collection on an unsecured car loan); *Hester*, 289 F. App'x at 37 (deciding, in 2008, issues related to collection on unsecured loan for installation of siding on a house). In contrast, the Defendants here were enforcing a security interest from Decedent's reverse mortgage.[28] This is the dispositive fact. Allegations regarding the regularity of collection efforts have no bearing on which definition of "debt collector" applies. Thus, since the "prohibitions contained in § 1692f(6) will cover security-interest enforcers, while

---

[25] Pl.'s Resp. 6, ECF No. 23.
[26] *Id.*
[27] Pl.'s Compl. 3–4, 9, ECF No. 1; Pl.'s Resp. 6, ECF No. 23.
[28] Pl.'s Resp. 7, ECF No. 23.

the other 'debt collector' provisions of the [FDCPA] will not," Defendants are only bound by the provisions laid out in § 1692f(6). *Obduskey*, 139 S. Ct. at 1038. The rest of the FDCPA does not apply.

Finally, Plaintiff contends that Defendants are enforcing a debt instead of a security interest because Defendants sought attorney fees from Plaintiff during the probate court proceedings.[29] However, Texas law expressly allows for collection of attorney's fees "in addition to the amount of a *valid claim* and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code § 38.001(a)(8) (emphasis added). But nowhere does Plaintiff allege that Defendants sought any sort of deficiency or money judgment to collect payment beyond the proceeds of the foreclosure. Nor does Plaintiff allege that the contractual provisions of the mortgage barred the collection of attorney's fees. Therefore, the Court finds that the pleadings do not contain facts showing that Defendants are enforcing a debt instead of a security interest.

Finding that the FDCPA claim pursuant to §§ 1692c–e is barred, the Court **GRANTS** Defendants' motion for judgment on the pleadings with respect to Plaintiff's FDCPA claim arising under §§ 1692c–e.

### ii. Plaintiff has Insufficiently Pleaded the 1692f Claims

Next, the Court turns to Plaintiff's claim under § 1692f of the FDCPA. Plaintiff pleads sufficient facts to allow the reasonable inference that Defendants are "debt collectors" under the limited-purpose definition. But this alone is not enough. Plaintiff must also provide facts showing

---

[29] Pl.'s Resp. 7, ECF No. 23.

that Defendants engaged in one of the prohibited collection practices. This is where Plaintiff falls short.

Looking to the complaint, Plaintiff supplies two paragraphs with allegations of unfair or unconscionable collections methods under 15 U.S.C. § 1692f(6).[30] This claim appears to allege the same thing as the §§ 1692c–e claims. According to Plaintiff, Defendants already recovered $89,000.00 by filing a claim with the title insurer that barred foreclosure of the property securing the debt.[31] And because Defendants are allegedly barred, Plaintiff concludes that their attempts to foreclose on the property violate § 1692f(6) because "there is no present right to possession of the property claimed as collateral through an enforceable security interest." § 1692f(6).

While it may be true that Defendants collected insurance proceeds from the title insurer, Plaintiff provides no additional facts or law to show that Defendants lack a present right to possession. Plaintiff's complaint is legally deficient because it cites no authority that suggests that Defendants lose their present right to possession of the property when they collect insurance proceeds. Nor can the Court find any authority that suggests so. Further, Plaintiff's claim is factually deficient because the complaint does not allege that Defendants have fully recovered the outstanding balance of the mortgage. Instead, the documents submitted with, and referred to in, Plaintiff's complaint show there remained a balance on the mortgage debt even after Defendants collected the title insurance proceeds.[32] Given the absence of specific, well-pleaded facts showing that the Defendants lacked a present right to possession, the Court finds that Plaintiff's conclusory

---

[30] Pl.'s Compl. 10–11, ECF No. 1.
[31] *Id.*
[32] *Id.* at Ex. J, ECF No. 1-11.

11

allegations regarding the third element of an FDCPA claim—that Defendants have engaged in an act or omission prohibited by the FDCPA—do not state a plausible claim.

Accordingly, the Court **GRANTS** Defendants' motion for judgment on the pleadings with respect to Plaintiff's remaining FDCPA claim under § 1692f(6).

### C. Plaintiff's TDCA Claims

Turning to the Plaintiff's final claims, the Court also finds that Plaintiff pleads insufficient facts to sustain a cause of action under the TDCA. Plaintiff states that Defendants are either "debt-collectors" or "third-party debt collectors" under the TDCA. Defendants argue that Plaintiff offers no facts to show that either TDCA definition applies. The Court agrees with Defendants.

#### i. "Debt Collectors" under the TDCA

To begin, the Court recognizes that there is a notable lack of Texas case law addressing whether a law firm—like Defendants' firm—that enforces a security interest qualifies a "debt collector" under the TDCA.[33] In fact, the Court could only locate one Texas appellate case that merely suggested that a law firm could qualify as a "debt collector" under the TDCA should the plaintiff establish that a high enough percentage of a law firm's activities involve collections. *See Catherman v. First State Bank of Smithville*, 796 S.W.2d 299, 303 (Tex. App.—Austin Sept. 19, 1990) (finding that law firms are not debt collectors for purposes of the TDCA when a small percentage of their business involves debt-collecting activities). However, the standard that federal courts have applied in evaluating whether a law firm is a debt collector appears to differ from the standard discussed in *Catherman*. *See, e.g.*, *Ruiz de Balderas*, 2020 WL 1479583, at *7 (requiring

---

[33] The lack of cases may be explained by the fact that claims of this nature are typically brought in federal court and combined with the FDCPA claims. *E.g.*, *Ruiz de Balderas v. ETX Successor Athens*, No. 6:19-cv-58-JDK-KNM, 2020 WL 1479583, at *7 (E.D. Tex. Mar. 4, 2020) *rec. adopted*, 2020 WL 13047695, at *4 (S.D. Tex. Dec. 17, 2012); *Welch v. Wells Fargo Bank*, No. H-12-1468, 2012 WL 13047695 (S.D. Tex. Dec. 17, 2012).

a plaintiff to allege that the defendants are collecting their *own* debt in order to qualify as a "debt collector" under the TDCA).

Regardless of which applies, Plaintiff fails to plead facts showing that Defendants are "debt collectors" under either standard. Applying the federal standard laid out by *Ruiz de Balderas* and other district courts, Plaintiff must allege that Defendants are attempting to collect their own debts—as opposed to debts of a third party—in order to come within the FDCPA's meaning of a "debt collector." Yet Plaintiff does not allege that Defendants are collecting their own debts. Instead, Plaintiff suggests throughout his complaint that Defendants are collecting on behalf of The Bank of New York Mellon Trust Company, N.A.[34] Even applying the suggested Texas standard discussed in *Catherman*, Plaintiff must allege that a high enough percentage of Defendants' firm activities involve collections. But Plaintiff does not even make the argument that Defendants' firm qualfiies as a debt collector based on the percentage of firm activities dedicated to debt collection. The closest Plaintiff comes to making such an allegation is his reference to Defendants' website description about the "comprehensive legal services" offered "to the banking and financial services industries."[35] Although Plaintiff further alleges that these services include "foreclosure, bankruptcy, eviction, litigation, REO closings, title examination & title curative," this allegation is still too attenuated to draw the inference that Defendants' firm activities include

---

[34] Pl.'s Compl. 4, 6, 8, ECF No. 1 (claiming the title insurance proceeds went to The Bank of New York Mellon Trust Company, N.A.).
[35] *Id.* at 14.

a *regular* and *high enough* percentage of debt collection. Therefore, Defendants are not "debt collectors" under the TDCA.

Finding that Plaintiff fails to allege facts showing that Defendants are "debt collectors" under the TDCA, the Court **GRANTS** Defendants' motion for judgment on the pleadings with respect to Plaintiff's TDCA "debt collector" claim.

        ii.  <u>"Third-Party Debt Collectors" under the TDCA</u>

For a law firm to qualify as a "third-party debt collector" who collects debt on behalf of a client, Plaintiff must allege that Defendants are "debt-collectors" for purposes of the FDCPA[36] *and* have "non-attorney employees who: (A) are regularly engaged to solicit debts for collection; or (B) regularly make contact with debtors for the purpose of collection or adjustment of debts." Tex. Fin. Code § 392.001(7). Plaintiff sufficiently pleads that Defendants are "debt collectors" under the FDCPA's limited-purpose definition, thus satisfying the FDCPA requirement of § 392.001(7). However, Plaintiff must also plead the additional requirements under § 392.001(7)(A)–(B) since the Defendnats are a law firm. He does not do so.

Here, Plaintiff raises no factual allegations in the complaint to suggest that Defendants employ non-attorney employees that participate in the conduct laid out in § 392.001(7)(A)–(B). In his response, Plaintiff claims that Defendants' sending the payoff statement to Decedent is evidence of non-attorney employees because, surely, a "lawyer ought to have known better than to send correspondence to a dead person, where the administrator of the decedent's estate is represented by counsel."[37] However, this claim is purely speculative and is not rooted in any

---

[36] Section 392.001(7) of the TDCA expressly incorporates the definition of "debt collector" used in § 1692a(6) of the FDCPA. The FDCPA definition includes *both* the primary-purpose and limited-purpose definitions discussed earlier in this opinion. Therefore, qualification under either FDCPA definition satisfies the first requirement of the TDCA's "third-party debt collector."

[37] Pl.'s Resp. 10, ECF No. 23.

factual allegations regarding Defendants' firm. Because specific, well-pleaded facts are required to sustain a cause of action, speculation is not enough.

Thus, the Court finds that Plaintiff's complaint does not sufficiently allege that Defendants are "debt collectors" or "third-party debt collectors" under the TDCA. Accordingly, the Court **GRANTS** Defendants' motion for judgment on the pleadings with respect to Plaintiff's "third-party debt collector" TDCA claim.

## IV.   LEAVE TO AMEND

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that when a party requests leave to amend, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Fifth Circuit has made clear that leave to amend is not automatic. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005). Although the Fifth Circuit has not provided detailed guidelines as to what constitutes a sufficient request for leave to amend, it has held that at least "*some* specificity is required." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). Further, "[i]f the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." *Scott v. U.S. Bank Nat'l Assoc.*, 16 F.4th 1204, 1209 (5th Cir. 2021) (citation omitted); *see also McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave to amend where plaintiffs "failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and the defendants to the substance of their proposed amendment").

Plaintiff requested leave to amend in his response brief.[38] However, this request for leave to amend consists of a single sentence lacking any specificity: "Alternatively, the Court should

---

[38] Pl.'s Resp. 10, ECF No. 23.

15

grant leave to allow Plaintiff an opportunity to amend his pleading to cure defects therein, if any."[39] Beyond this, Plaintiff has failed to furnish the Court with an amended complaint and has failed to alert the Court to the substance of the proposed amendment. Accordingly, the Court **DENIES** Plaintiff's request for leave to amend.

## V.   CONCLUSION

Based on the foregoing, the Court finds that Plaintiff has not alleged sufficient facts at this stage to allow the Court "to draw reasonable inference[s] that the [D]efendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Finding that Plaintiff has failed to establish viable causes of action under the FDCPA and TDCA, the Court hereby **GRANTS** Defendants' motion for judgment on the pleadings in its entirety. Specifically, the Court **GRANTS** Defendants' motion regarding the FDCPA claims and **GRANTS** Defendants' motion regarding the TDCA claims. The Court further **DENIES** Plaintiff's request for leave to amend.

Therefore, it is **ORDERED** that Plaintiff's claims are **DISMISSED with prejudice**.

**SO ORDERED** on this **28th day** of **August, 2023**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

---

[39] *Id.* at 2.